## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ROSE McCANTS,                          :

    Plaintiff,                       :
                            CIVIL ACTION NO. 16-00283-WS-C

vs.                                    :

CITIFINANCIAL SERVICING, LLC,          :
*et al.*,                              :

    Defendants.                      :

### REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and S.D. Ala. Gen. L.R. 72(a)(2)(S), on Defendants CitiFinancial Servicing LLC's ("CitiFinancial"); CitiMortgage, Inc.'s ("CitiMortgage"); and Citibank, N.A.'s ("Citibank"), motion to compel arbitration, (Doc. 12), filed on July 18, 2016, and Plaintiff Rose McCants's motion to strike, (Doc. 17), filed on August 10, 2016.  Defendants argue that Plaintiff signed an arbitration agreement in conjunction with her residential mortgage loan from Associates Financial Services Company of Alabama, Inc. ("Associates Financial"), and asks this Court to compel Plaintiff to arbitrate her claims in this pending action.  Plaintiff's position in her motion is that the declaration of Lani Dodson ("Dodson"), upon which the Defendants base their claim that Plaintiff should be compelled to arbitrate her claims, does not contain competent and admissible evidence in support of their motion to compel.

### I.  FACTUAL BACKGROUND

On or October 25, 1999, Plaintiff obtained a residential mortgage loan (the "Loan"), which was originated by Associates Financial.  (*See* Declaration of Lani A. Dodson, Doc 12-1, at 5).[1]  In connection with the Loan, Plaintiff signed a Real Estate Mortgage (the "Mortgage") in favor of Associates Financial, and, in accordance with the policies and procedures of Associates Financial, was required to sign a "separate Arbitration Agreement" (the "Arbitration Agreement" or the "Agreement") in order to obtain the Loan.  (Doc 12-1, at 7).[2]

The Mortgage Plaintiff executed includes a clause that states "[t]he parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference."  (Doc. 12-1, at 7).  Specifically, the Arbitration Agreement provides, in pertinent part, as follows:

> In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement.
>
> **ARBITRATION**:  Arbitration is a method of resolving disputes between parties without filing a lawsuit in court.  By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, you and we must submit them to an arbitrator.  The arbitrator's decision is final and binding on you and us.  The arbitrator does not have to give any written reasons for the decision.  You and we are giving up the right to bring a lawsuit in court, including the right to a jury trial.

---

[1] Dodson has been employed as a Paralegal-Legal North America Operations & Technology at Citigroup, Inc. since 2000.  Before the acquisition of Associates First Capital Corporation by Citigroup, Inc. in 2000, she had been with Associates First Capital Corporation from 1976-2000. (Doc. 12-1, ¶¶ 2 & 6).  Thus, in 1999, she was employed by the ultimate parent corporation of the lender, Associates First Capital Corporation.  (Doc. 12-1, ¶¶ 2 & 6).

[2] Ultimately, CitiFinancial, one of the named defendants, serviced the loan at issue.  The several intervening mergers are shown as follows:  CitiFinancial is the successor by merger to CitiFinancial Corporation, LLC ("CitiFinancial Corporation"), (Doc. 22-3, at 1-6); which was the successor by merger to CitiFinancial Corporation 216, LLC ("CitiFinancial Corporation 216"), (Doc. 22-2, at 1); which was the successor by merger to Associates Financial, (Doc. 22-1, at 1-3).

**DISPUTES COVERED**:  This agreement applies to all claims and disputes between you and us.  This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:

- your loan from us today;
- any previous loan from us and any previous retail installment sales contract or loan assigned to us;
- all the documents relating to this or any previous loan or retail installment sales contract;
- any insurance purchased in connection with this or any previous loan or retail installment sales contract;
- whether the claim or disputes must be arbitrated;
- the validity of this arbitration agreement;
- any negotiations between you and us;
- any claim or dispute based on an allegation of fraud or misrepresentation;
- any claim or dispute based on a federal or state statute; and
- any claim or dispute based on an alleged tort.

This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents.  Affiliates corporations are our parent corporations, subsidiary corporations, and sister corporations.  Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.

. . .

**ARBITRATION RULES:**  The arbitration will be conducted under the "Commercial Arbitration Rules" of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement.  If there is any conflict between what the Commercial Arbitration Rules say and what this agreement says, what this agreement says will govern.

. . .

**OTHER IMPORTANT AGREEMENTS:**

1.    This agreement does not affect the applicability of any statute of limitations.
2.    The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds

3

coming from outside the state.  The Federal Arbitration Act applies to and governs this agreement.

3.    If either you or we should need to file a lawsuit to enforce this agreement, the suit may be brought in any court with jurisdiction.

4.    You and we agree that this agreement applies to all of your, and all of our, assigns and heirs.

. . .

**READ THIS ARBITRATION AGREEMENT CAREFULLY.  IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.**

(Doc. 12-1, at 8-9).

A signed copy of the Arbitration Agreement executed by the parties as part of the loan process for Plaintiff's loan has been lost or destroyed.  The copy that has been produced by the Defendants is the only version of an arbitration agreement that Associates Financial used in mortgage loans extended in Alabama in 1999, when Plaintiff obtained the subject mortgage loan.  (Doc. 12-1, ¶¶ 8-10).  Therefore, according to Dodson, this is the arbitration agreement that would have been executed prior to the approval for a loan to the Plaintiff.  (Doc. 12-1, ¶¶ 9-10).

Plaintiff filed the instant action with the Circuit Court of Mobile County, Alabama on May 15, 2016, claiming negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, breach of contract, fraud, placement in a false light, defamation, libel, slander, violations of Truth in Lending Act, violations of Real Estate Settlement Procedures Act, violations of the Fair Credit Reporting Act, violations of the Fair Debt Collection Practices Act, and declaratory relief.  (Doc. 1-1, at 1-20).  Defendants then filed a notice of removal to the United States District Court for the Southern District of Alabama, Southern Division, invoking diversity and federal question jurisdiction.  (Doc. 1, at 1-12).

## II.  DISCUSSION

### A.    Plaintiff's Motion to Strike the Dodson Declaration

Central to resolving these motions is the consideration of Plaintiff's motion to strike because Plaintiff contests the propriety of the declaration of Dodson, upon which Defendants rest their contention that Plaintiff is bound to arbitrate her claims.  The motion was specifically filed pursuant to Rule 56(e), Federal Rules Civil Procedure ("FRCP").  (Doc. 17, at 1) ("**COMES NOW** Rose McCants, pursuant to Rule 56(e) of the Federal Rules of Civil Procedure and moves the court to strike the declaration testimony of Lani Dodson and all exhibits attached thereto or reference (sic) therein . . . .").  Upon review of the record and after listening to oral arguments, this motion should be denied for the following reasons.

First, this motion to strike is deemed procedurally improper.  A motion to strike may only be used to strike pleadings, not a declaration filed in support of a motion to compel arbitration.  *See* FED. R. CIV. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").  Dodson's declaration is clearly not a pleading.  *See McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1298 (M.D. Ga. 2003); FED. R. CIV. P. 7(a). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matter. A court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Price v. Dunn*, CA 14–0472–KD–C, 2015 WL 6962854, at *5, n.14 (S.D. Ala. Oct. 20, 2015) (citations omitted).  In addition, motions to strike are considered "drastic,

disfavored remed[ies]," *Odom v. Southeast Supply Header, LLC*, No. 09–0147–WS–N, 2009 WL 1658961, at *1 (S.D. Ala. June 11, 2009), and have been found to be nothing more than "time wasters" in many cases. *McNair v. Monsanto Co.*, 279 F. Supp. 2d at 1298 (citations omitted). "In this circuit, the use of a [R]ule 12(f) motion for the advancement of objections to a[ declaration] filed in support of a motion is generally considered improper." *Id.*

Second, Plaintiff relies on FRCP 56 to provide authority for striking the declaration in question. However, Plaintiff provides no authority for applying FRCP 56(c) to declarations filed in support of motions to compel arbitration. Instead, Defendants have found that when faced with similar motions, some courts have rejected such attacks. *See Rosen v. Serv. Corp. Int'l*, No. 11-62547-CIV, 2012 WL 370298, at *3 (S.D. Fla. Feb. 3, 2012) (denying motion to strike declaration submitted in support of motion to compel arbitration for failure to comply with FRCP 56(c)(4), noting, "Although the determination of whether a trial is warranted on the existence of arbitration agreement is akin to a summary-judgment proceeding, it does not actually involve a motion for summary judgment, to which FRCP 56(c)(4) specifically applies."); *McNair v. Monsanto Co.*, 279 F. Supp. 2d at 1298 (denying motions to strike affidavits and exhibits filed in support of motion to transfer under 28 U.S.C. § 1404 for failure to comply with FRCP 56, noting that "the substantive motion before the Court is not a summary judgment motion," and "Section 1404(a) does not expressly require that an affidavit submitted in support of a motion to transfer be based on personal knowledge as Federal Rule of Civil Procedure 56(e) does in regard to summary judgment motions"); *see also Schwartz v. CACH, LLC,* No. 13-12644-FDS, 2014 WL 298107, at *2, n.2 (D. Mass. Jan. 27, 2014) (denying motion to strike affidavit filed

6

in support of motion to compel arbitration on the ground that the affiant was not competent to testify "under the Federal Rules of Evidence" and instead applying Rule 803's[, Federal Rules of Evidence,] business records standard); *Holloman v. Mail-Well Corp.*, No. 1:03-CV-2635-BBM, 2005 WL 6105099, at *11 (N.D. Ga. Jan. 24, 2009) (denying motion to strike where the motion "request[ed] relief for which Plaintiffs have provided no authority").

Thus, it is the undersigned's opinion that the motion to strike is procedurally improper and should be denied on that basis alone.

### B.    Applying FRCP 56(c) Requirements

At heart, Plaintiff argues that the information contained in the Dodson Declaration should be rejected as not being competent evidence.  Therefore, her argument will be treated as an objection to the consideration of such evidence and in so doing; the undersigned will use FRCP 56(c) as a framework for the discussion.

A motion to compel arbitration is "summary-judgment-like" in nature, and an order compelling arbitration is "'in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate.'"  *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785 (11th Cir. 2008) (unpublished) (citation omitted)); *see also Nicosia v. Amazon.com, Inc.*, 2016 WL 4473225, at *4 (2nd Cir. 2016) ("In deciding motions to compel [arbitration], courts apply a standard similar to that applicable for a motion for summary judgment." (quotation marks and citation omitted)); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3rd Cir. 2013) ("[W]]hen the complaint and incorporated documents facially establish

7

arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue . . . the issue should be judged under the [FRCP] 56 standard."); *Southern Energy Homes, Inc. v. Godwin*, 183 Fed. Appx. 441, 443 (5th Cir. 2006) ("Consistent with the well-known standard of review for a summary-judgment ruling, the denial of a motion to compel arbitration is reviewed *de novo*." (citation omitted)). Indeed, the Eleventh Circuit adopted the reasoning of the Third Circuit in that "'only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'" *Magnolia Capital Advisors*, 272 F. App'x at 785-86 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)). Therefore, a declaration filed in support of a motion to compel arbitration should be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated. *See* FED. R. CIV. P. 56(C)(4).

Plaintiff's motion to strike challenges the Declaration of Dodson, (Doc. 12-1), on the grounds that Dodson was without personal knowledge of the facts, the declaration fails to set forth facts that would be admissible in evidence, and that she was not competent to testify on the matters stated. (Doc. 17, at 3). The Court will address each of these contentions.

Plaintiff's argues that Dodson lacked personal knowledge of the facts. In order to satisfy FRCP 56, the declarant's testimony must be based on personal knowledge and not "upon information and belief." *Pace v. Capobiano*, 283 F.3d 1275, 1278 (11th Cir. 2002) (citations omitted). "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has

personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."  FED. R. EVID. 602.  In the Declaration, Dodson specifically says that she is "competent to testify regarding the matters contained [in her Declaration], and [made the] Declaration based on personal knowledge that [she] obtained through [her] employment and upon client matter records kept in the ordinary course of business that [she] reviewed," (Doc. 12-1, ¶ 1), "review[ ] [of] the attached business records and from [her] employment experience with Associates First Capital and Citigroup," (Doc. 12-1, ¶ 3), and her "employment experience" and "familiar[ity]" with Associates Financial's policies and procedures with respect to the execution of arbitration agreements as they existed at the time [Plaintiff] obtained her Loan," (Doc. 12-1, ¶ 9).  A review of the content of the Declaration and the record of this action as a whole, convinces the undersigned that this testimony satisfies the personal knowledge requirement.

Plaintiff's second contention is that Dodson's Declaration sets forth facts that would not be admissible in evidence.  Attached to Dodson's Declaration is a copy of an executed real estate mortgage, (Doc. 12-1, at 5-7), and an unexecuted arbitration agreement, (Doc. 12-1, at 8-9).  Plaintiff's challenge cites to the declarant's need for personal knowledge found in Fed. R. Evid. ("FRE") 602 and the business-record exception to hearsay rule found in FRE 803(6).  (Doc. 17, at 4-5).  As stated above, the Court is satisfied that Dodson's evidence is based on personal knowledge as required by FRE 602, therefore, the Court will address Plaintiff's contention under FRE 803(6).

"An authenticated document is admissible as a business record if it 'was made at or near the time by-or from information transmitted by-someone with

knowledge;' if it 'was kept in the course of a regularly conducted activity;' and if 'making the record was a regular practice of that activity.'" *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1267 (11th Cir. 2015) (quoting FED. R. EVID. 803(6)(A)-(C)). All the aforementioned conditions must be "shown by the testimony of the custodian or another qualified witness, or by a certification that complies with [FRE] 902(11)" and "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." FED. R. EVID. 803(6)(D)-(E). "Someone who is knowledgeable about the procedures used to create the alleged business records must testify," *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1268 (citing *U.S. v. Garnett*, 122 F.3d 1016, 1018-19 (11th Cir. 1997) ("[FRE] 803(6) requires the testimony of a custodian or other qualified witness who can explain the record-keeping procedure utilized.")), and "[t]he testifying witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1268 (citations omitted).

In Dodson's Declaration, she states that she is "familiar with the operations and record-keeping procedures of CitiFinancial," (Doc. 12-1, ¶ 3), which is the ultimate successor by merger to Associates Financial; the Mortgage attached to her affidavit is a "true and correct copy," (Doc. 12-1, ¶ 7); the Arbitration Agreement attached to her affidavit is a "true and correct unexecuted copy of the 'separate Arbitration Agreement' referenced in the Mortgage," (Doc. 12-1, ¶ 8); and said records attached to her declaration "were generated and/or maintained by CitiFinancial's predecessor[-Associates Financial-]in the ordinary course of its business," (Doc. 12-1, ¶ 8); "were made at or near the time of the event and recorded by a person with knowledge of the event and charged with

the responsibility for recording such events," (Doc. 17, ¶ 8); and "are kept in the ordinary course of CitiFinancial's regularly conducted business activity and it is CitiFinancial's regular practice to create and maintain these documents," (Doc. 17, ¶ 8).  Based upon such testimony and a lack of evidence to the contrary, the records attached to Dodson's declaration are admissible as business records according to the Federal Rules of Evidence.

It is also Dodson's testimony that an "executed Arbitration Agreement is currently lost or destroyed," and she attached to her Declaration an unexecuted arbitration agreement that Plaintiff would have had to sign in conjunction with the mortgage.  (Doc. 17, ¶ 9).  "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise," FED. R. EVID. 1002, but "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:  (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith."  FED. R. EVID. 1004.  Here, Dodson states that the original Arbitration Agreement is either lost or destroyed and bad faith has not been alleged.  Plaintiff's counsel argues that he and his client do not believe that an arbitration agreement was signed, but Plaintiff has not produced any evidence to support this contention.[3]  Thus, it is established that an original does not exist and the unexecuted Arbitration Agreement is admissible to prove its content.

Plaintiff's last contention is that Dodson is not competent to testify on the matters stated.  Dodson states in her Declaration that she is "over the age of

---

[3] The arguments in brief or presented by counsel at oral argument in regard to the nonexistence of an arbitration agreement are not evidence.  *See Byrne v. Ala. Alcoholic Beverage Control Bd.*, 635 F. Supp. 1281, 1298 (M.D. Ala. 2009).  Plaintiff's oral motion, during oral argument, for leave to file an affidavit is **DENIED**.  Plaintiff failed to provide good cause for not filing an affidavit within the briefing period.

twenty-one (21) years" and is "competent to testify regarding the matters" contained in the affidavit. (Doc. 12-1, ¶ 1). Further, Dodson states that she was employed with Associates First from "approximately 1976 through 2000," continued her employment with various subsidiaries of Citigroup, (Doc. 12-1, ¶ 2), and, currently, is a "Paralegal-Legal North America Operations & Technology at Citigroup," (Doc. 12-1, ¶ 3). Plaintiff's challenge as to Dodson's competency to testify fails, and, in sum, the Court finds that Dodson's Declaration provides convincing proof of her competency to testify to the matters contained in the Declaration.

C.    **Plaintiff Must Arbitrate Her Claims**

Defendants' motion to compel arbitration avers that Plaintiff is bound to arbitrate her claims by the terms of the Arbitration Agreement. Defendants argue that the prerequisites under the Federal Arbitration Act ("FAA") for enforcement of arbitration agreements is satisfied, the Arbitration Agreement expressly includes claims against successors and affiliates of Associates Financial, and all of Plaintiff's claims should be dismissed. Defendants ask this Court to compel Plaintiff to arbitrate her claims and for the Court to dismiss the Plaintiff's claims with prejudice. Plaintiff argues that the Arbitration Agreement is invalid, federal law prohibits mandatory arbitration clauses in mortgage contracts and prevents enforcement of any arbitration clauses in mortgage contracts, unconscionability, the Plaintiff's claims fall outside the Arbitration Agreement's scope, the Arbitration Agreement is elective, the Arbitration Agreement is ambiguous, and the Arbitration Agreement is not enforceable by the Defendants because they are not parties to the contract.

The execution of this arbitration agreement was clearly required in order for Plaintiff to obtain the Loan according to the policies and procedures of Associates Financial. The evidence supports a conclusion that the executed arbitration agreement is either lost or destroyed and the relevant portions of that agreement have been quoted herein. *Supra* at 2-4.

### 1.   Burden of Proof Under Alabama Law

Section 2 of the FAA, provides that "[a] written provision" to arbitrate shall be enforceable, as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

There are two types of validity challenges to an arbitration agreement under 9 U.S.C. § 2: "'One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546, U.S. 440, 444, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006)). Only the first type of validity challenge is relevant to a court's determination. *Rent-A-Center, West, Inc.*, 561 U.S. at 70, 130 S. Ct. 2772. "If a party challenges the validity under [9 U.S.C.] § 2 of the precise agreement to

arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under [9 U.S.C.] § 4." *Rent-A-Center*, 561 U.S. at 71, 130 S. Ct. 2772.

In analyzing the validity of an arbitration agreement, the United States Court of Appeals, Eleventh Circuit, has applied the following analysis:

> The validity of an arbitration agreement is generally governed by the [FAA], 9 U.S.C. §§ 1 et seq., [ ] which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration. The FAA embodies a liberal federal policy favoring arbitration agreements. The purpose of the FAA was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation.
>
> . . .
>
> The FAA generally provides for the enforceability of a contract evidencing a transaction involving commerce.
>
> . . .
>
> [U]nder the FAA, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract. The FAA preempts state law to the extent it treats arbitration agreements differently than other contracts. The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts. However, state law generally governs whether an enforceable contract or agreement to arbitrate exists. Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts. The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68 (11th Cir. 2005) (citations and quotation marks omitted). The Eleventh Circuit has "consistently [ ] held that state law governs the issue of the existence of an agreement to arbitrate under the FAA." *Bazemore v. Jefferson Capital Sys, LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016).

Under Alabama law, "[a]rbitration provisions are to be treated like any other contractual provision."  *Serv. Corp. Int'l v. Fulmer*, 883 So. 2d 621, 633 n.15 (Ala. 2003).  "A party seeking to compel arbitration has the burden of proving: (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce." *Kenworth of Birmingham, Inc. v. Langley*, 828 So. 2d 288, 290 (Ala. 2002).

Defendants produced the Arbitration Agreement, (Doc. 12-1, at 8-9), that Associates Financial used at the time that Plaintiff executed the Mortgage, (Doc. 12-1, ¶ 10).  The Mortgage contains a clause that states that the parties entered into a separate Arbitration Agreement, (Doc. 12-1, ¶ 8), an original executed version of which was either lost or destroyed, (Doc. 12-1, ¶ 9).  As a threshold matter, the FAA does not require that an arbitration agreement be signed, *see Caley v. Gulfstream Aerospace Corp.*, 428 F.3d at 1369 ("[W]hile the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties."), and Alabama contract law in regard to contract formation allows for the incorporation of the terms of another document by reference, *see Advance Tank & Const., Co., Inc. v. Gulf Coast Asphalt Co., L.L.C.*, 968 So. 2d 520, 524 (Ala. 2006) ("Parties to a contract are bound by pertinent references therein to outside facts and documents.  Other writings, or matters contained therein, which are referred to in a written contract, may be regarded as incorporated by the reference as a part of the contract and, therefore, may properly be considered in the construction of the contract.  A contract may incorporate the terms of another document by reference." (internal alterations, citations, and quotation marks omitted)).  Therefore, Defendants have met their burden of proof as to the existence of a contract containing an arbitration agreement.

The Eleventh Circuit in *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868 (11th Cir. 2005), discussed the FAA's requirement that a valid arbitration agreement evidence a transaction involving commerce:

> The FAA makes enforceable a written arbitration provision in a contract evidencing a transaction involving commerce. The FAA defines "commerce" as commerce among the several States. The Supreme Court has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. The Court has further explained the phrase "evidencing a transaction" means only that the transaction turns out, in fact, to have involved interstate commerce, even if the parties did not contemplate an interstate commerce connection.

*Jenkins*, 400 F.3d at 874 (internal citations and quotation marks omitted). The broad interstate commerce requirement of § 2 of the FAA is satisfied in this case, since payments made on the Loan by the Plaintiff, a citizen of Alabama, (Compl., at ¶ 2), were deposited in an account of Associates Financial's, CitiFinancial Corporation 216's, CitiFinancial Corporation's, or CitiFinancial's, all of which are located outside the State of Alabama, (Doc. 12-1, at ¶ 11). The broad impact of residential mortgage lending on the national economy, *see Citizens Bank v. Alafabco.Inc.*, 539 U.S. 52, 58, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause."); *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 38-39, 100 S. Ct. 2009, 64 L. Ed. 2d 702 (1980) ("[B]anking and related financial activities are of profound local concern . . . . Nonetheless, it does not follow that these same activities lack important interstate attributes."), and Congress' power to regulate that industry pursuant to the Commerce Clause, *see* Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, are without question. In addition, the Arbitration

Agreement indicates that the parties contemplated an interstate commerce connection.  (*See* Doc. 12-1, at 9) ("The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state.  The Federal Arbitration Act applies to and governs this agreement.").  The underlying contract to the Arbitration Agreement evidences a transaction affecting interstate commerce, and, therefore, the Court finds that the Defendants have met their burden of proof under Alabama law of proving the existence of a contract containing an arbitration agreement and that the underlying contract evidence a transaction affecting interstate commerce.

### 2.   Plaintiff's Contentions

Plaintiff's first contention is that an arbitration agreement cannot be produced, therefore no agreement exists.  As discussed, a copy of the arbitration agreement that was used at the time of the loan by Associates Financial was produced, the Arbitration Agreement was incorporated by reference into the executed mortgage, and an arbitration agreement does not require a signature to be enforceable.  Thus, Plaintiff's first contention fails.

Plaintiff's second contention is that if the Arbitration Agreement exists, federal law prohibits mandatory arbitration of disputes involving closed-end loans secured by a dwelling and open-end loans secured by a consumer's principal dwelling, 15 U.S.C. § 1639c(e)(1), and that provisions in such loans that bar a consumer from bringing an action in court are unlawful, 15 U.S.C. § 1639c(e)(3).  Both of the cited provisions are included in TILA and were amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), as enacted on July 21, 2010.  *See* Dodd-Frank Act, Pub. L. 111203, § 1414(a), 124 Stat. 1376, 2149 (2010).  The mortgage contract was signed

by Plaintiff in 1999, prior to the enactment of the Dodd-Frank Act. Plaintiff argues that those specific provisions of the Dodd-Frank Act should be retroactively applied in this case.

Section 1639c(e) states:

(1) In general
No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration ... as the method for resolving any controversy or settling any claims arising out of the transaction.

. . .

(3) No waiver of statutory cause of action
No provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit referred to in paragraph (1), shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction, pursuant to section 1640 of this title or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or any other Federal law.

15 U.S.C. § 1639c(e)(1), (e)(3) (2010).

The Supreme Court's analysis as to the retroactive application of statutes is as follows:

Statutes are disfavored as retroactive when their application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. . . . Accordingly, it has become a rule of general application that a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication.

This Court has worked out a sequence of analysis when an objection is made to applying a particular statute said to affect a vested right or to impose some burden on the basis of an act or event preceding the statute's enactment. We first look to whether

> Congress has expressly prescribed the statute's proper reach and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying our normal rules of construction. If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment. If the answer is yes, we then apply the presumption against retroactivity by construing the statue as inapplicable to the event or act in question owing to the absen[ce of] a clear indication from Congress that intended such a result.

*Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37, 126 S. Ct. 2422, 165 L. Ed. 2d 323 (2006) (internal citations and quotation marks omitted).

In general, "[t]he largest category of cases in which [the Court] applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 271, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994) (footnote omitted). Arbitration agreements are to be enforced in the same manner as a contract, according to their terms. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct 1248, 103 L. Ed. 2d 488 (1989) ("[The FAA] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (citation omitted)).

Congress did not use explicit language as to the retroactive effect of § 1639c(e)(1) and § 1639c(e)(3). Therefore, the inquiry shifts to whether retroactively applying the statute would affect substantive rights, liabilities, or duties on the contracting parties. *Fernandez-Vargas*, 548 U.S. at 37, 126 S. Ct. 2422. The Plaintiff cites to the decisions in *Wong v. CKX, Inc.*, 890 F. Supp. 2d 411 (S.D.N.Y. 2012), and *Pezza v. Inv'rs Capital Corp.*, 767 F. Supp. 2d 225 (D. Mass.

2011),[4] to support her contention that the statutes should be given retroactive effect, but the Court concludes that those specific provisions of the Dodd-Frank Act should not be given retroactive effect because such an action would affect substantive rights, liabilities, or duties under the contract, a decision consistent with other district courts.[5]

Plaintiff's third contention is that the Arbitration Agreement is unenforceable because it is unconscionable. (Doc. 16, at 15-19). "Under Alabama law, unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence." *Bess v. Check* Express, 294 F.3d 1298, 1306 (11th Cir. 2002) (citing *Green Tree Fin. Corp. v. Wampler*, 749 So. 2d 409, 415 & 417 (Ala. 1999)). "[A]rbitration agreements are not in themselves unconscionable." *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1086 (Ala. 2005) (citing *Ex parte McNaughton*, 728 So. 2d 592, 597-98 (Ala. 1998)). An unconscionable arbitration agreement would need to be one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Blue Cross Blue Shield of Ala.*, 923 So. 2d at 1086 (citations omitted).

---

[4] Holding that the Sarbanes-Oxley Act, Pub. L. 107-204, section barring the arbitration of whistleblower claims, 18 U.S.C. § 1514A(e)(2), as amended by the Dodd-Frank Act in 2010, had retroactive effect. *But see Junka v. Suntrust Bank*, No. 1:14-cv-01056-WBH-AJB, 2014 WL 12284032, at *8 (N.D. Ga. October 31, 2014) ("[O]ther district courts that have-unlike *Pezza* and *Wong*-carefully considered the importance of maintaining the 'predictability and stability' attendant to contractual agreements and the FAA's presumption against retroactivity have found that anti-arbitration statutes do not apply retroactively." (citations omitted)); *Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1078-79 (D. Colo. 2013) ("*Pezza* and *Wong* too blithely disregard the presumption against retroactivity and the need for 'predictability and stability' attendant on preserving established contractual expectations." (citation omitted)).

[5] *See Wiggins v. Nationstar Mortg.*, No. 14-cv-12680, 2015 WL 4967137, at *8 (E.D. Mich. Aug. 20, 2015), *aff'd*, No. 15-2129 (6th Cir. June 23, 2016); *Davies v. Green Tree Servicing, LLC*, No. 3:14-1711, 2015 WL 3795621, at *5-7 (M.D. Pa. June 18, 2015); *Beckwith v. Caliber Home Loans, Inc.*, No. 3:15-cv-00581-RDP, 2015 WL 3767187, at *3-4 (N.D. Ala. June 17, 2015); *Richards v. Gibson*, No. 1:15cv7-LG-RHW, 2015 WL 926594, at *1-3 (S.D. Miss March 4, 2015); *Junka v. Suntrust Bank*, No. 1:14-cv-01056-WBH-AJB, 2014 WL 12284032, at *7-9 (N.D. Ga. October 31, 2014); *Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1078-79 (D. Colo. 2013).

Alabama courts look to four factors when considering whether a contract is unconscionable:

> "In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract."

*Id.* at 1086 (quoting *Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992)). Additionally, Alabama courts distinguish between "substantive unconscionability" and "procedural unconscionability" when weighing those factors. *Blue Cross Blue Shield of Ala.*, 923 So. 2d at 1086. Under Alabama law:

> [Substantive unconscionability] relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

> Procedural unconscionability, on the other hand, deals with procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction.

> To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability. A finding of a procedural abuse, inherent in the formation process, must be coupled as well with a substantive abuse.

*Id.* at 1086-87 (internal citations and quotation marks omitted).

In this instance, Plaintiff does not direct the Court's attention to evidence of a procedural deficiency in the contract formation process. Because Plaintiff

cannot show both procedural and substantive unconscionability, under Alabama law, Plaintiff has not proven that the Arbitration Agreement is unconscionable.

Plaintiff's fourth contention is that her claims fall outside the scope of the Arbitration Agreement.  Whether a claim is contemplated under an arbitration agreement is governed by the terms of the agreement.  *See Volt Info. Scis., Inc.*, 489 U.S. at 478, 109 S. Ct 1248 ("[The FAA] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (citation omitted)).  The Arbitration Agreement applies to "all claims and disputes arising out of, in connection with, or relating to:  [the] loan . . . any claim or dispute based on a federal or state statute; and any claim or dispute based on an alleged tort."  (Doc. 12-1, at 8).  A thorough examination of the Plaintiff's complaint results in the conclusion that each of Plaintiff's claims relate to the subject residential mortgage loan, and, therefore, are within the scope of the Arbitration Agreement.

Plaintiff's fifth contention is that the Arbitration Agreement is elective. The Agreement states that "[i]n consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement," and "if there are any disputes between you and us, you and we must submit them to an arbitrator."  (Doc 12-1, at 8).  Plaintiff struggles in her attempt to interpret the language of the Arbitration Agreement to provide an option to arbitrate.  It is clear that arbitration is required by the agreement; therefore, Plaintiff's argument is rejected.

Plaintiff's sixth contention is that there is a provision in the Mortgage that is contradicted by the Arbitration Agreement.  "[I]f there exists inconsistency

between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed," *City of Fairhope v. Town of Daphne*, 208 So. 2d 917, 924 (Ala. 1968). Plaintiff fails to direct the Court's attention to the provision in the Mortgage that is the basis of her challenge and to demonstrate how the inconsistent clauses in the Mortgage and Arbitration Agreement cannot be reconciled.

Plaintiff's seventh contention is that the Arbitration Agreement is ambiguous as to essential terms in that it fails to state the forum for arbitration as well as the rules of the forum that are to apply. Under Alabama law:

> [T]he intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.

*Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000) (citations omitted). As to the forum of the arbitration, the Agreement reads "[t]he arbitration will take place in the county where you live unless you and we both agree to another location." (Doc. 12-1, at 9). As to the rules of the forum that are to apply, the Agreement reads "[t]he arbitration will be conducted under the 'Commercial Arbitration Rules' of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement," and in the event of a conflict between the Agreement and the Commercial Arbitration Rules, "what [the A]greement says will govern." (Doc. 12-1, at 9). Giving the language of these portions of the Arbitration Agreement their ordinary, plain, and natural meaning, the Court finds them unambiguous

23

and susceptible of only one reasonable meaning, which is the forum where the arbitration will take place will be in the county in which Plaintiff lives, unless otherwise agreed, and the rules to be applied to the proceeding are the Commercial Arbitration Rules of the American Arbitration Association, unless those rules conflict with the Arbitration Agreement, in which case the terms of the Agreement control.  Therefore, Plaintiff's contention fails.

Plaintiff's final contention is that the Defendants cannot enforce the Arbitration Agreement because they are not parties to it.  Under Alabama law, successors by merger may be compelled to arbitrate a matter under an arbitration provision to which they were nonsignatories.  *See Cadence Bank, N.A. v. Goodall-Brown Assocs., L.P.*, 178 So. 3d 814, 826 (Ala. 2014) ("Brown's claims against [Cadence Bank, N.A. ('Cadence')] arise out of the actions of [Superior Bank, N.A. ('Superior II')], *which has now merged with Cadence*.  Cadence, of course, never 'signed' a contract containing an arbitration agreement; instead, through Superior II, it *bought* the note and its attendant rights and obligations.  Superior II is now Cadence; Cadence stands in the shoes of Superior II." (emphasis in original)); *Nissan Motor Acceptance Corp. v. Ross*, 703 So. 2d 324, 326 (Ala. 1997) ("A valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses.").  Defendant CitiFinancial, as successor by merger who "stands in the shoes" of Associates Financial through a series of mergers, can enforce the Arbitration Agreement even though it is not a signatory to it.

Further, the language of the Arbitration Agreement contemplates Defendants CitiBank, CitiFinancial, and CitiMortgage as third-party beneficiaries to the contract.  Under Alabama law, a nonsignatory to an arbitration provision

can enforce the terms of the provision under a third-party beneficiary theory.  *See Fountain v. Ingram*, 926 So. 2d 333, 335 (Ala. 2005) ("[T]his Court will enforce an arbitration provision in a contract to which the proponent of arbitration is not a signatory in either of two instances.  One instance involves a variation on the theory of 'equitable estoppel.'   Another instance arises from a third-party-beneficiary theory . . . ." (internal citations and quotation marks omitted)).  "A party claiming to be a third-party beneficiary must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party."  *Id.* at 336 (citations and internal quotation marks omitted).  "The third-party-beneficiary theory has particular application in the arbitration context where . . . the contract clearly shows that the parties contemplated the nonsignatory proponent of arbitration as a third-party beneficiary of the arbitration provision."  *Id.* (citation, and internal footnote and quotation marks omitted).  The Alabama Supreme Court has "often acknowledged the right of contracting parties to limit the scope of an arbitration provision to the *parties*, or to *specifically described* third parties."  *Id.* at 337 (emphasis in original) (citations and internal quotation marks omitted).

Here, the relevant provisions in the Arbitration Agreement are that "this agreement applies to all of your, and all of our, assigns, and heirs," (Doc. 12-1, at 9), and "[t]his agreement also applies to any claim or dispute . . . between you and . . . any of our affiliate corporations," (Doc. 12-1, at 8).  As previously discussed, Defendant CitiFinancial "stands in the shoes" of Associates Financial through a series of mergers and retains the same contractual rights under the Arbitration Agreement.  Defendants CitiBank and CitiMorgage, as affiliates of Defendant CitiFinancial and against which the Plaintiff has brought claims

covered by the Arbitration Agreement, are contemplated as third-party beneficiaries.[8]

Accordingly, the Court finds that the Arbitration Agreement is enforceable under the FAA.

### III.  CONCLUSION

Based on the issues resolved herein, it is recommended that Plaintiff McCants's motion to strike, (Doc. 17), be **DENIED**, and Defendants' motion to compel arbitration, (Doc. 12), be **GRANTED IN PART AND DENIED IN PART.** The Plaintiff should be required to arbitrate the issues raised in her Complaint but the motion to dismiss her claims with prejudice should be denied.  Instead, this matter should be **STAYED** and the parties directed to provide periodic reports on the status of the arbitration proceedings.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of the Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. Ala. Gen. L.R. 72(c)(1) & (2).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report

---

[8] Defendants, as nonsignatories to the Arbitration Agreement, argue that the doctrine of equitable estoppel would apply to allow them to compel arbitration.  Under Alabama law, "[a]rbitration may be compelled under the doctrine of 'intertwining,' where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim."  *Jenkins v. Atelier Homes, Inc.,* 62 So. 3d 504, 512-13 (Ala. 2010) (citations and internal quotation marks omitted).  As previously discussed, all of the Plaintiff's claims are arbitrable since the language of the Arbitration Agreement covers them. Therefore, the doctrine of intertwining and equitable estoppel would not apply in this case since there are no nonarbitrable claims.

and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 23rd day of February 2017.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**